Arlene B. SINGER, et al., Plaintiffs,

v.

SHANNON & LUCHS COMPANY, et al., Defendants.

Civ. A. No. 82–151.

United States District Court,
District of Columbia.

Feb. 10, 1987.

Joel E. Joseph, Washington, D.C., for plaintiffs.

Richard W. Luchs, King & Nordlinger, James P. Mercurio, Arent, Fox, Kintner, Plotkin & Kahn, Carl L. Gell, Cooter, Gell

and Cooter, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

The court once again considers motions by Shannon & Luchs for attorney's fees in litigation with Arlene Singer and Joel Joseph. Now before the court are Shannon & Luchs' motion for attorney's fees and expenses, and Shannon & Luchs' motion for attorney's fees and expenses incurred in connection with its fee application. This case is on remand from the Court of Appeals, which directed that we state with specificity our calculation of attorney's fees awarded to Shannon & Luchs, especially with regard to the work done on the successive appeals in this case. Shannon & Luchs has presented petitions for attorney's fees supported by detailed documentation of the hours expended on this litigation and affidavits setting forth the hourly rates charged by the various attorneys employed in this case. Plaintiffs oppose both motions for fees and expenses.

### Background

In order properly to evaluate the fee applications, it is necessary to detail the long, circuitous and tortured journey this case has taken through the judicial system. This case arises out of a $90,000 loan advanced by the National Savings and Trust Company (NS & T) to Joel Joseph and Arlene Singer (plaintiffs) in April, 1981. Plaintiffs sought this loan in order to purchase another home. Plaintiffs executed a promissory note to cover the loan; repayment of the note was guaranteed by Shannon & Luchs and was secured by a deed of trust to American Security Bank on plaintiffs' property on Foxhall Road in the District of Columbia. By the terms of the note and the deed of trust, payment of the entire amount of principal and interest was due within 180 days, or upon the sale of the Foxhall Road property, whichever occurred first. Shannon & Luchs was the exclusive broker of plaintiffs' Foxhall Road property.

For reasons which are not of record, the Foxhall Road property did not sell. Plaintiffs refused to pay the note when it came due, so NS & T called upon Shannon & Luchs to satisfy its guarantee. Shannon & Luchs paid the principal and interest due, an amount totalling $96,696.99, to NS & T, following which Shannon & Luchs commenced steps toward foreclosure. In order to prevent foreclosure, plaintiffs on January 18, 1982, filed this action against Shannon & Luchs alleging antitrust violations, violations of D.C. law governing second mortgages, breach of Shannon & Luchs fiduciary duty as real estate agent for plaintiffs, and breaches of the broker listing contracts. Plaintiffs also moved for a temporary restraining order to prevent foreclosure.

On January 29, 1982, Judge Penn, by stipulation and order, directed plaintiffs to pay to Shannon & Luchs $2,100, in consideration for which Shannon & Luchs agreed not to proceed with foreclosure during the following two months, unless plaintiffs defaulted on the payment of the $2,100. After April 1, 1982, however, Judge Penn's order permitted Shannon & Luchs to proceed with foreclosure and forbade plaintiffs from seeking to enjoin or otherwise to restrain a foreclosure sale. By the terms of this stipulation and order, plaintiffs also withdrew their motion for a TRO.

Plaintiffs then filed a motion for summary judgment on Count II of the complaint. Count II alleged violations of the D.C. law governing the terms of mortgages. Defendants counterclaimed for liability on the note and cross-moved for summary judgment on Count II of the complaint and on its counterclaims. On March 18, 1982, this court denied plaintiffs' motion for summary judgment and granted of Shannon & Luchs' cross-motion for summary judgment. Judgment was so entered on the same day.

This case then made its first trip to the United States Court of Appeals when plaintiffs appealed from the grant of summary judgment. Shannon & Luchs moved to dismiss the appeal on grounds of lack of finality. The Court of Appeals granted this motion and dismissed the appeal on March 31, 1982. The court noted that an appeal

would be proper if this court directed entry of final judgment on the adjudicated claims.

On April 21, 1982, plaintiff Joel Joseph shifted the area of combat by filing suit in the Superior Court for the District of Columbia. *Joseph v. Luchs*, Civil Action No. 5791–82 (hereinafter the *Joseph* action)[1]. The complaint in *Joseph* alleged that Shannon & Luchs had breached its duties as trustees under the deed of trust by failing to make an independent determination of the need for foreclosure. One week later, on April 28, 1982, Joseph filed a motion for a temporary restraining order seeking to restrain the foreclosure in order for the court to have a chance to name new trustees. Defendant opposed the motion for a TRO, and filed a motion to stay the proceedings on April 29. In connection with this action, Joseph's deposition was taken on May 12, 1982. Defendant moved to dismiss under Fed.R.Civ.P. 41(b) on May 17, 1982.

The litigation in the Superior Court also triggered a round of motions in this court. On April 28, 1982, Shannon & Luchs moved in this court to remedy plaintiffs' violation of Judge Penn's stipulation and order. After briefing and a hearing, this court ordered Joseph to comply with Judge Penn's January, 1982 order and to cease seeking relief restraining foreclosure. Order of May 20, 1982. We also directed Joseph to pay costs, excluding attorney's fees, incurred by Shannon & Luchs in filing both the motion to enforce Judge Penn's order of January 29, 1982, and its opposition to the temporary restraining order filed in Superior Court.

On June 3, 1982, Joseph in compliance with this court's May 20 order, withdrew his motions in Superior Court for a TRO and for a preliminary injunction. With the June 16 date of the foreclosure sale fast approaching, Joseph, still undaunted, filed on June 8, 1982, an emergency motion to remove the trustees of the deed of trust. At a hearing on June 10, 1982, the Superior Court denied this motion. Plaintiff Joseph then sought an emergency ruling by the District of Columbia Court of Appeals, which denied his motion on June 15, 1982. The foreclosure sale then proceed as scheduled on June 16. The *Joseph v. Luchs* litigation in the Superior Court terminated four months later, with no intervening activity, when Judge Bowers of that court granted defendants' motion to dismiss on October 28, 1982.[2] Order of Oct. 28, 1982, Civ. No. 5791–82 (D.C.Super.).

The foreclosure sale did not, however, end litigation in this court. First, with respect to the amounts due under the promissory note, the foreclosure sale did not satisfy the full amount due. Shannon & Luchs then moved for an order making this court's summary judgment final, pursuant to Fed.R.Civ.P. 54(b). The court granted this motion on September 17, 1982, and entered judgment for $96,696.99, 14% interest from October 27, 1981, foreclosure costs of $3,006, transfer tax of $750 and attorney's fees of $15,000.

This case then made its second trip to the United States Court of Appeals. After filing the notice of appeal, plaintiffs filed a motion for stay of judgment in this court, which was granted as to the attorney's fee award but which was denied as to all other parts of the judgment. Plaintiffs then filed a similar motion in the Court of Appeals, which was denied for lack of a supersedeas bond. Order of Nov. 1, 1982 (D.C. Cir.) (*per curiam*). Plaintiff next sought a summary reversal, which also was granted as to the attorney's fee award, but denied as to all other parts of the judgment. After briefing and oral argument, the Court of Appeals affirmed all the remaining portions of the judgment without opinion. Order of May 16, 1983 (D.C.Cir.). A petition for rehearing and the suggestion of rehearing *en banc* were both denied. Order of

---

1. To distinguish the case in this court from the case in Superior Court, the case in this court will be referred to as the *Singer* case.

2. Plaintiffs assert in their opposition, Opp. at 5 n. 1, that the *Joseph v. Luchs* litigation ended pursuant to a stipulation and order. Plaintiffs have confused Judge Bowers' order ending the *Joseph* litigation with Judge Penn's stipulation and order of January 29, 1982.

June 14, 1983 (*per curiam*); Order of June 28, 1983 (*per curiam*) (*en banc*). The summary reversal and remand therefore concerned only this Court's award of attorney's fees of $15,000.

On remand, this court received an attorney's fees application, with supporting documentation, from Shannon & Luchs. Plaintiffs opposed. On January 10, 1984, we awarded Shannon & Luchs $78,115.60 in costs and attorney's fees. Final judgment on the attorney's fee award was entered on February 22, 1984. At the same time, Counts I, III and IV, which were not previously adjudicated on summary judgment, were dismissed with prejudice in accordance with a stipulation in which Shannon & Luchs agreed to pay plaintiffs $6,000. Plaintiffs then made a third trip to the Court of Appeals to challenge this court's attorney's fee award.

The D.C. Circuit vacated this court's award of attorney's fees and remanded for further consideration. *Singer v. Shannon & Luchs*, 779 F.2d 69 (D.C.Cir.1985). The Court of Appeals directed us to consider and to specify the reasonableness of the attorney's fee award in light of that court's opinion in *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982). The court also wanted us to specify the areas of compensable activity and to clarify the grounds upon which fees would be awarded, whether pursuant to the attorney's fee provisions of the note or on independent grounds such as bad faith or vexatiousness. Further, the court directed that we reconsider the award of attorney's fees for the successful aspect of the earlier appeal, *i.e.*, the previous award of attorney's fees of $15,000.

### Discussion

Consideration of defendants' second application for attorney's fees, in light of the remand, presents two tasks. First, it is necessary to determine the appropriate attorney's fee award for all activities prior to the present fee application. To do this, we need to examine and to delineate the scope of the attorney's fees provision in the deed of trust, *i.e.*, which activities in this litigation are subject to this provision; we also need to decide whether any independent grounds for attorney's fees exist to support a fee award as to any litigation not encompassed by the contractual fee provision. The second task will be to determine the reasonable fees and expenses recoverable in connection with the preparation and submission of the successful portions of Shannon & Luchs present fee application. For all activities for which a fee award would be proper, the reasonable amount of such fees is calculated in accordance with the "lodestar" method outlined in *National Ass'n of Concerned Veterans*.

The job of calculating the reasonable attorney's fees due Shannon & Luchs is in two respects easier now than in January, 1984. First, there remains no question in this case as to whether the deed of trust can properly be interpreted to sustain a contractually-based attorney's fee award. In the Memorandum Order of January 10, 1984, this court noted that the language of the deed of trust was unambiguous in allowing "costs, expenses and attorney's fees incurred" with respect to the trust and the promissory note. Order of January 10, 1984 at 2. The United States Court of Appeals agreed that the language of the deed and the promissory note supported some award of fees, *Singer*, 779 F.2d at 70, noting only that it might not be appropriate to award fees for the portions of the actions on which Shannon & Luchs was unsuccessful. *Id.* at 71. Thus, we can take it as established that the deed of trust authorizes an award of attorney's fees and expenses.

Shannon & Luchs has also eased the task by offering a more limited attorney's fee petition. In part addressing the concerns voiced by the Court of Appeals, Shannon & Luchs has reduced the number of hours claimed for work in the Court of Appeals and reduced the number of hours claimed for discovery done on Counts I, III and IV of the complaint. Significantly, Shannon & Luchs also has not claimed any hours for work done on the most recent appeal which concerned the sole issue of attorney's fees.

## I. *The Scope of Activities Subject to a Fee Award*

In determining the scope of activities subject to an award of fees, we first determine which of the claims litigated in this court and in the Superior Court are "related" to the note and deed of trust. Shannon & Luchs argues that all the claims litigated should be considered "related" to the deed of trust and note, and that Shannon & Luchs prevailed as to all claims raised by plaintiffs' complaint. A slightly more restricted interpretation of "related" actions is, however, more appropriate.

Because the deed of trust is a contract, the intent of the parties—or what reasonably can be inferred to have been the intent of the parties—governs the interpretation of the contract. A contractual attorney's fee provision can encompass fees incurred litigating claims other than those brought to enforce the contract. In interpreting similar provisions, other courts have held that where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim. *Erickson Enterprises, Inc. v. Louis Wohl & Sons, Inc.,* 422 So.2d 1085 (Fla.App. 1982); *see. also* Note, *Recovery of Attorneys' Fees Provided for In Bill, Note, or Similar Evidence of Indebtedness, as Affected by Opposing Party's Recovery,* 41 ALR2d 677, 683. This test has not, however, been used as a limiting principle in interpreting the scope of an attorney's fee provision.

■ In the absence of any evidence of the actual intent of the parties, we inter-

pret the attorney's fee provision in the deed of trust to allow recovery of fees as to all issues concerning the note, the deed of trust, the performance of the trustees of the trust, or the enforcement of any claims or judgments. Applying this interpretation, Shannon & Luchs is entitled to recover all the attorneys' fees incurred with respect to the actual foreclosure, all fees incurred litigating Count II of the complaint and both of Shannon & Luchs counterclaims, as well as all fees generated by the *Joseph v. Luchs* litigation in the Superior Court.[3] Recovery of fees in *Singer* for all discovery matters prior to this court's initial grant of summary judgment in March, 1982 is also allowed, but Shannon & Luchs cannot recover fees incurred for discovery taken after that date in the *Singer* action.[4] Shannon & Luchs also cannot recover fees for any work on Counts I, III and IV of the complaint because these arise from plaintiffs' real estate brokerage contract with Shannon & Luchs rather than from plaintiffs' obligations under the note and deed of trust. The recovery of the fees incurred in responding to the complaint and to the January, 1982 motion for a temporary restraining order will be allowed regardless of which count of the complaint was litigated; at the initial stages the collateral issues were still inextricably linked with the actions on the note and trust deed.

As to those fees not within the scope of the contractual fees provision, although plaintiff was willing to settle the claims on Counts I, III, and IV of the complaint for a mere $6,000—an amount which, in this court's experience, indicates a nuisance value settlement—we have in our discretion decided not to award fees based on vexa-

---

**3.** Plaintiff asserts that Shannon & Luchs application for fees incurred in the *Joseph* litigation is barred by the *res judicata* effect of this court's May 20, 1982 order, which granted to Shannon & Luchs as sanctions the costs of its motion to enforce the January, 1982 stipulation and order and the costs of responding to the motion for a TRO in *Joseph,* but excluding attorney's fees. Plaintiffs' contention is without merit. *Res judicata* does not bar the present application because the court was only considering the appropriate sanction for a willful violation of a court order; the court was not interpreting the con-

tractual attorney's fee provision. The claim for fees under the attorney's fee clause of the deed of trust is not merged into the earlier prayer for sanctions.

**4.** Because the May 15, 1982 deposition of Joel Joseph was taken in connection with the *Joseph v. Luchs* litigation, and because this deposition was used extensively in support of the motions filed in the *Joseph* case, the fees for this deposition are allowed.

tiousness and bad faith, however justified such an award might be. The attorney's fee award to Shannon & Luchs is therefore limited to those fees justified by the contractual undertakings of the parties.

## II. *Calculating the Reasonable Attorney's Fees*

### A. *The Reasonable Hourly Rate*

The Court of Appeals laid out its guidelines for determining the reasonable hourly rate in *Laffey v. Northwest Airlines,* 746 F.2d 4 (D.C.Cir.1984). In that case, the Court of Appeals, on the grounds of both congressional intent and administrability, equity and efficiency, established a presumption of reasonableness in favor of the rates charged in private representation. The court stated emphatically:

> ... when fixed market rates already exist, there is no good reason to tolerate the substantial costs of turning every attorney's fee case into a major ratemaking case. *In almost every case, the firms established billing rates will provide fair compensation.*

*Id.* at 24 (emphasis in original). The court later again stated, "*So long as the firm's own rate falls within the rate brackets, it is the market rate* for the purposes of calculating the lodestar." *Id.* at 25 (emphasis in original).[5]

Shannon & Luchs has submitted affidavits from Mr. Richard Luchs of King & Nordlinger and from Mr. James Mercurio of Arent, Fox, Kintner, Plotkin and Kahn (hereinafter Arent, Fox). Mr. Luchs' affidavit attests that the standard rate for all Shannon & Luchs work performed by his firm is $80 per hour. Mr. Mercurio's affidavit testifies to the rates typically charged by Arent, Fox for the work of each of the attorneys, law clerks, legal assistants and billable staff.

Plaintiffs object, however, because Shannon & Luchs has not submitted any affidavits from other attorneys attesting to "bracket" rates defining the scope of reasonable market rates. Plaintiffs argue that, by not producing these affidavits, Shannon & Luchs has failed to meet its burden of proving the reasonableness of the hourly rates charged by Arent, Fox and King & Nordlinger. While Shannon & Luchs might have submitted affidavits from several other law firms listing the ranges of their attorney's fees, to deny Shannon Luchs' motion solely on this ground would be to honor form over substance. From its experience both as a private practitioner and in adjudicating other attorney's fee awards, the court knows that the rates claimed are well within the range of rates charged by firms comparable to King & Nordlinger and Arent, Fox.

Plaintiffs object that Shannon & Luchs has failed to adduce any evidence of the rates usually charged for collections cases or for cases of indebtedness secured by mortgages; the affidavits attest only to the rates generally charged by King & Nordlinger and Arent, Fox in their legal practice, regardless of the particular type of work. Plaintiff, citing 55 Am.Jur.2d, Mortgages § 627 and a collection of cases from various jurisdictions, argues that fees, if awarded, usually are from two to ten percent of the balance of the mortgage due when suit was filed. Opp. at 12. Plaintiff also cites provisions of the D.C. Code allowing attorney's fees of ten percent on foreclosures of property by "money lenders" licensed by the District[6] and fifteen percent in consumer credit collections. D.C. Code § 28–3806.

These authorities are not helpful in determining the reasonable hourly rate under the protracted and unusual facts of this litigation. First, both D.C. statutes are designed to govern small transactions with

---

**5.** Although *Laffey* dealt with fees awarded under the Civil Rights Attorney's Fees Awards Act of 1976, the D.C. Circuit, in its decision in *Singer,* applied the law of attorney's fee awards developed under that act to contractually based fee awards. *See Singer,* 779 F.2d at 70–71. The same grounds of administrability, equity and

efficiency that justified the Court of Appeals' ruling in *Laffey* apply equally in this case.

**6.** D.C. Code § 26–708. This section does not govern this case because banks and building and loans are exempt from its provisions and because the loan was greater than $10,000.

routine collections. The cases and the note cited are also not apposite since, as the history of the litigation demonstrates, this case is anything but a routine collection case. The usual foreclosure does not involve two attempts for TRO's in both the District and Superior Court of the District, emergency motions in the Superior Court and in the D.C. Court of Appeals, and an appeal to the D.C. Circuit on the issue of liability on the note and the note's compliance with D.C. Code § 28–3301(c). Given the length and intensity of this litigation, the market rates charged by King & Nordlinger and Arent, Fox for general litigation services are appropriate rates. Thus, we adopt these rates as the reasonable hourly rates for the purposes of calculating a "lodestar" fee.

B. *Reasonable Number of Hours Expended*

■ We turn to examine Shannon & Luchs' fee application to determine if the hours claimed for activities within the scope of attorney's fees provisions of the deed of trust are reasonable. Shannon & Luchs has submitted copies of its computerized time records, as well as summaries of these records in support of its application. These records meet the requirements set forth by the Court of Appeals in *National Association of Concerned Veterans*, 675 F.2d at 1327. Shannon & Luchs' fee application requests fees starting in November, 1981 and ending in September, 1983, a period of twenty-two (22) months.

For November and December, 1981, Shannon & Luchs asks fees of 3.4 hours of work. Since this activity took place prior to the filing of this lawsuit, there is no danger of allowing recovery on non-prevailing claims. At that time, Shannon & Luchs was preparing to foreclose on the Foxhall Road property or to take other steps to enforce the note and the deed of trust. These fees, for conferences and preliminary work, seem reasonable and are within the scope of the deed of trust. Thus, recovery of these fees will be allowed.

In January, 1982, all activity surrounded the filing of the action, the motion for a

TRO, and the entry of the stipulation and order of Judge Penn. As previously indicated, all these hours are within the scope of the deed of trust. We also find that the hours claimed by Shannon & Luchs for work done both by Arent, Fox and by King & Nordlinger were reasonably expended considering the amount and level of activity during that month. Thus, Shannon & Luchs can recover all fees claimed for this month.

In February, 1981, the time claimed was expended in order to answer the complaint and to prepare and to file defendants' successful opposition to plaintiffs' motion for summary judgment and the motion for summary judgment on the counterclaims and on Count II. This time appears to have been reasonably expended, and it is within the scope allowed by the deed of trust. Thus, recovery for these hours is allowed.

For March, 1982, of the fees requested by Shannon & Luchs, we deduct 2.0 hours of time spent by J. Mercurio for work on the notice of deposition and request for documents and preparing the opposition to the motion for a protective order. These excluded fees lie outside the scope of the deed of trust because they relate solely to the claims arising out of the brokerage agreement rather than from the deed of trust. All other hours are allowed as reasonable, including the hours expended to oppose plaintiffs' first appeal of the March 18 summary judgment.

Of the time expended in April, 1982, the vast majority was spent litigating the *Joseph v. Luchs* action in Superior Court and the motion brought in this court to enforce Judge Penn's order. We will disallow, however, 4.0 hours expended by J. Mercurio for the Singer deposition, for the request for documents, for the interrogatories, and for conferences with G. Marx, on April 6 and 19 as beyond the scope of the deed of trust. For G. Marx, in addition to the 3.0 hours deducted by Shannon & Luchs for the Singer deposition, we further deduct 2.0 hours for conference with J. Mercurio on April 6 and for preparation of

questions for the Joseph deposition[7] as well as 3.2 hours spent on preparing a request for production of documents and interrogatories. The remainder of the hours expended by Arent, Fox and King & Nordlinger appear to be reasonable.

For May, 1982, the principal deductions made from the Shannon & Luchs request are for discovery other than the deposition of Joseph on May 12, 1982, and for work apparently duplicative or unused. For J. Mercurio we deduct 1.0 hours spent preparing interrogatory answers, opposition and objections. All the time for G. Marx is deducted since it relates to interrogatories, or is for review of "splitting cause of action," for which there is no indication that such work was used in litigation. Of the time requested for J. Bartoo, 9.4 hours for preparation of objections and answers to interrogatories are deducted, as well as 9.1 hours spent reviewing the file and interrogatory answers, which seem unnecessarily duplicative. In addition 2.0 hours of conference time for J. Bartoo are also deducted. Of D. Whiddon's time, the 1.5 hours spent on Judge recusal work is excluded because the issue of recusal was not a part of this case. The remainder of the hours expended and claimed were related to compensable aspects of the case and were reasonably expended.

Of the time expended by Shannon & Luchs attorneys from June 1–16, 1982, virtually all the time relates either to the flurry of eleventh hour activity in *Joseph* or to the foreclosure sale. This all falls within the scope of the deed of trust and is reasonable in light of the substantial amount of litigious activity. We deduct only 0.2 of J. Mercurio's time spent preparing a deposition. The remainder of the hours for June 1–16 are allowed.

Of the hours claimed for June 17–30, 1982, most of these hours are compensable portions of the *Joseph* litigation. We deduct the 12.9 hours spent by G. Marx on a response to a motion to compel filed by plaintiffs and 20.0 hours spent by J. Stuckey on research on an abuse of process

motion—which was never filed—and on the admissibility of evidence presented during previous litigation. All other hours are allowed, including the hours related to the motion to dismiss the *Joseph* action.

For the time expended in July and August, 1982, Shannon & Luchs requests compensation for work relating to plaintiffs' motion to amend the March 18, 1982 summary judgment and for the motion to dismiss *Joseph v. Luchs.* These hours are compensable under the deed of trust and appear to be reasonably expended. Thus, all requested hours are allowed for July and August, 1982.

For September 1982, the hours claimed by Shannon & Luchs relate primarily to the plaintiffs' motion to stay judgment. Since plaintiffs succeeded in staying the judgment as to $15,000 of a $115,452.99 judgment, Shannon & Luchs can only recover 87% of the hours expended on the motion to stay the judgment during this month. In addition, we deduct 1.8 hours spent on conferences and letters to Rucci, whose deposition was taken during September, 1982. This means that Shannon & Luchs can be compensated for .6 hours for G. Marx, 7.7 hours for J. Mercurio, 6.1 hours for D. Personette, and 3.0 hours for C. McDaid. The hours claimed for King & Nordlinger will be allowed in full since these are related to the motion to dismiss *Joseph* only.

For October, 1982, we deduct all time spent litigating the plaintiffs' motion to compel. This encompasses 6.5 hours for G. Marx and 0.5 hours for J. Mercurio. We also exclude 2.3 hours for J. Mercurio relating to the Bernstein deposition. We allow in full the hours accumulated on a hearing on the motion to dismiss *Joseph;* and we allow 87% of 4.3 hours expended by J. Mercurio on the motion to stay judgment, *i.e.* 3.7 hours. The hours for King & Nordlinger are allowed as reasonable.

For November, 1982 all the hours claimed relate either to the execution of the unstayed judgment or to plaintiffs' largely unsuccessful motion at the D.C. Circuit for

---

7. While preparation of questions for the Joseph deposition might be allowable, these hours are

denied since they cannot be segregated from the hours spent on the Singer deposition.

summary reversal. As to the hours for enforcement of the judgment, these hours are allowed under the note and are reasonable. As to the hours expended on the motion for summary reversal, Shannon & Luchs is clearly entitled to recover most of these fees, since summary reversal was denied as to all aspects of the judgment except the attorney's fee award. Since Shannon & Luchs has deducted 20% of its expenditures in connection with the main appeal, a figure we find to be a more than reasonable division between the attorney's fee issue and the other issues on appeal, we also apply this figure to the motion for summary reversal.[8] As such, of the 2.2 hours claimed for J. Mercurio on the motion for summary reversal, we allow recovery for 1.7 hours; for D. Personette, we allow recovery for 3.4 hours.

For December, 1982 through May, 1983, all the hours claimed relate to the appeal. Applying the same 20% reduction, Shannon & Luchs may recover only for 1.2 of the 1.6 hours claimed for December, 1982, all hours claimed on behalf of Arent, Fox for January, 1983, 1.0 hours for King & Nordlinger for January, 1983, 0.5 hours for Arent, Fox for February, 1983, 1.5 hours for Arent, Fox for March, 1983, 0.3 hours for King & Nordlinger for April, 1983, 1.9 hours for King & Nordlinger for May, 1983, and all hours claimed for Arent, Fox for May, 1983. These hours all represent 80% of the total hours spent working on the appeal for each month.

As to the hours claimed for July through September, 1983, these hours represent work on the enforcement of the judgment or incidental communications between counsel. All these hours are allowable under the deed of trust, and are reasonable in

amount, except the 2.0 hours claimed for J. Mercurio in September to attend a status call is deducted.

## C. *The Lodestar Fee*

■ Having determined the reasonable hourly rate and the reasonable number of hours expended, all that is left is to calculate the lodestar fee. This calculation is summarized in Exhibit 1, attached to this opinion. In total, Shannon & Luchs is entitled to receive $53,750.90 in attorney's fees for all compensable litigation up to, but not including, the time expended in preparing this fee application. As we stated in connection with our previous fee award, this award, seemingly disproportionate to the amount of the note, has been "caused by plaintiffs own obstructive behavior in pursuing every device to prevent the foreclosure from taking place." Order of January 10, 1984 at 2. This lodestar figure represents a reasonable attorney's fee due under the terms of the deed of trust.

## III. *Reasonable Expenses Claimed in July 1986 Petition*

In order to award costs, these too must be segregated to include only those costs within the scope of the deed of trust and incurred in connection with successful litigation. Of the expenses submitted for reimbursement, Shannon & Luchs cannot recover any transcript costs, except those incurred in connection with the May, 1982 deposition of Joel Joseph. The remaining expenses are, however, not so easily segregated. For these expenses, such as copying, messenger fees, phone charges, the costs will be apportioned based on the percentage of billable hours for which recovery of fees is allowed.

---

8. The issue of the reasonableness of the attorney's fee award was one of several issues raised on appeal. Plaintiffs also challenged the propriety of entering a final judgment as to the issues on the note before reaching a final disposition of all issues in the litigation, appealed the grant of summary judgment on Count II of the complaint and on the balance due under the note, and disputed this court's interpretation of the deed of trust as authorizing a fee award. Notably, the issue of the amount of the fee award consumed only 7 pages of plaintiffs' 52 page appellate brief. Furthermore, because the reasonableness of the fee award issue was decided by summary reversal on January 26, 1986, work done after that date presumably dealt only with the issues on which Shannon & Luchs ultimately prevailed. With these considerations in mind, Shannon & Luchs deduction of 20% of its time on appeal seems more than adequate to ensure that compensation is not awarded for the portions of the appeal on which Shannon & Luchs did not prevail.

The total amount of expenses claimed by Shannon & Luchs through September, 1983 is $4,588.23. Of this amount, transcript costs of $460.36 are excluded. On the remaining amount, 86.6% of the expenses are compensable, reflecting the same percentage recovery as for the hours of billable personnel time claimed by Shannon & Luchs.[9] The total amount of expenses due Shannon & Luchs is $3,574.74.

### IV. *Attorney's Fees & Expenses Incurred Preparing the Fee Application*

Shannon & Luchs has also petitioned for an award of the attorney's fees and expenses incurred in connection with the present fee application. Plaintiffs do not dispute that Shannon & Luchs is entitled to such an award. Plaintiffs object, instead, on the same grounds as for the principal petition for attorney's fees, asserting failure to prove that the rates claimed are reasonable rates and arguing that the aggregate attorney's fee request is excessive.

Because Shannon & Luchs' petition for fees incurred in connection with the fee application is accompanied by an affidavit from Mr. Mercurio similar to the affidavit accompanying the principal application, plaintiffs' objections as to the reasonableness of the hourly rates are rejected for the same reasons that the same objections were rejected in the context of the principal fee award. Again, we find, based on our experience, that Arent, Fox's usual hourly rates are within the range of fees charged by firms of comparable stature for commercial litigation.

As to the aggregate amount of fees claimed in connection with the present application for attorney's fees, we note that these amounts seem excessive. The D.C. Circuit has, however, mandated that we follow the lodestar method in assessing attorney's fees. Thus, an award of fees is appropriate for all hours reasonably expended. Plaintiffs point to no hours claimed that they consider to be excessive. In light of the detail required to sustain a fee application, we also cannot point to any unreasonably expended hours. The Court of Appeals has required that the activities for which fees are claimed be segregated, and that the petitioning party compile substantial documentation of the hours spent on these activities, and the purposes for which these hours were expended. Such detail takes time to assemble and to organize, and adds significantly to the cost of preparing a fee application.[10]

Petitioner cannot, however, recover fees and expenses for those parts of the attorney's fee application on which they did not prevail. Thus, the aggregate fees and costs for this motion will only be allowed in the same proportion that such aggregate fees and costs were allowed on the principal motion for fees and expenses. Since we have awarded fees and costs totalling $57,325.64 of a total request by Shannon & Luchs of $65,242.13, Shannon & Luchs can recover 87.8% of the fees and expenses incurred in connection with the fee application. Thus, on Shannon & Luchs petition for fees and costs incurred in connection with its application for attorneys' fees we award petitioners $12,377.16 in attorney's fees and $278.34 in costs.

---

**9.** The number of hours of work allowed by the court (573.50 hours) represents 86.6% of the hours for which Shannon & Luchs has petitioned for reimbursements (662.10 hours).

**10.** Plaintiffs argue that the hours expended were excessive considering that all that Shannon & Luchs had to do was to reorganize and to resubmit its previous applications. We cannot agree on two grounds. First, Shannon & Luchs, in resubmitting its application, eliminated hours that the Court of Appeals found questionable. This required work clearly beyond reorganizing and resubmitting the earlier petition. Second,

even if we were to find these hours duplicative of earlier efforts and thus excluded recovery for some of the hours spent preparing the July, 1986 petition, Shannon & Luchs would then be allowed to recover some of the time spent preparing the attorney's fee petitions submitted prior to our January, 1984 award. Since plaintiffs have not objected to any specific portion of the hours now claimed by Shannon & Luchs, we need not parse these hours more specifically than necessary to exercise independent discretion.

*Conclusion*

Upon consideration of the fee petitions submitted by Shannon & Luchs, Shannon & Luchs is entitled to $53,750.90 in attorney's fees and $3,574.74 in costs incurred during the litigation between plaintiffs and Shannon & Luchs. In addition, Shannon & Luchs shall receive attorney's fees of $12,377.16 and costs of $278.34 incurred in connection with its application for attorney's fees.

An order consistent with the foregoing has been entered this day.

### ORDER AND FINAL JUDGMENT

For the reasons stated in the accompanying memorandum opinion, it is by the court this 9th day of February, 1987,

ORDERED that Shannon & Luchs' motion for attorneys' fees and expenses is granted to the extent of $53,750.90 in attorney's fees and $3,574.74 in expenses, and that the remainder of Shannon & Luchs'

motion for attorney's fees is denied; and it is

ORDERED that Shannon & Luchs motion for attorney's fees and expenses incurred in connection with its fee application is granted to the extent of $12,377.16 in attorney's fees and $278.34 in expenses, and the remainder of Shannon & Luchs motion for attorney's fees and expenses incurred in connection with its fee application is denied.

There being no issues left for this court to adjudicate, it is by the court

FURTHER ORDERED, ADJUDGED AND DECREED that defendant Shannon & Luchs Company, in addition to any amounts previously recovered on its counterclaims in this action, recover from plaintiffs Arlene B. Singer and Joel D. Joseph, jointly or severally, the aforesaid amounts of attorney's fees and expenses totalling $69,981.14, with interest thereon at the rate provided in 28 U.S.C. § 1961, against Arlene B. Singer and Joel D. Joseph and each of them.

### EXHIBIT 1

Singer et al. v. Shannon Luchs Attorneys' Fee Summary

| Date | Attorney | Hours claimed | Hours Granted | Hourly Rate | Total |
|------|----------|---------------|---------------|-------------|-------|
| Nov. 1981 | D. Huddle | 1.40 | 1.40 | 70 | 98.00 |
| | R. Luchs | 0.50 | 0.50 | 70 | 35.00 |
| Dec. 1981 | D. Huddle | 0.20 | 0.20 | 70 | 14.00 |
| | R. Luchs | 1.30 | 1.30 | 70 | 91.00 |
| Jan. 1982 | G. Marx | 2.80 | 2.80 | 95 | 266.00 |
| | J. Mercurio | 18.90 | 18.90 | 145 | 2,740.50 |
| | R. Luchs | 6.90 | 6.90 | 70 | 483.00 |
| Feb. 1982 | G. Marx | 31.30 | 31.30 | 95 | 2,973.50 |
| | J. Mercurio | 7.40 | 7.40 | 145 | 1,073.00 |
| | R. Luchs | 0.90 | 0.90 | 70 | 63.00 |
| Mar. 1982 | C. Strong | 0.20 | 0.20 | 130 | 26.00 |
| | G. Marx | 14.20 | 14.20 | 95 | 1,349.00 |
| | J. Mercurio | 11.80 | 9.80 | 145 | 1,421.00 |
| | R. Luchs | 1.60 | 1.60 | 70 | 112.00 |
| Apr. 1982 | G. Marx | 9.90 | 4.70 | 95 | 446.50 |
| | J. Mercurio | 35.90 | 31.90 | 145 | 4,625.50 |
| | R. Luchs | 6.40 | 6.40 | 80 | 512.00 |
| | D. Huddle | 0.30 | 0.30 | 80 | 24.00 |
| | W. Daisley | 5.20 | 5.20 | 80 | 416.00 |
| May–82 | G. Marx | 1.20 | 0.00 | 95 | 0.00 |
| | J. Mercurio | 32.00 | 31.00 | 145 | 4,495.00 |
| | J. Bartoo | 45.90 | 25.40 | 80 | 2,032.00 |
| | D. Whiddon | 3.00 | 1.50 | 40 | 60.00 |

| Date | Attorney | Hours claimed | Hours Granted | Hourly Rate | Total |
|---|---|---|---|---|---|
| | D. McDaid | 1.50 | 1.50 | 40 | 60.00 |
| | R. Luchs | 2.60 | 2.60 | 80 | 208.00 |
| | W. Daisley | 1.20 | 1.20 | 80 | 96.00 |
| June 1–16, 1982 | G. Marx | 2.00 | 2.00 | 95 | 190.00 |
| | J. Mercurio | 31.50 | 31.30 | 145 | 4,538.50 |
| | M. Jaffe | 0.70 | 0.70 | 150 | 105.00 |
| | H. Sinclair | 8.80 | 8.80 | 100 | 880.00 |
| | D. Whiddon | 1.00 | 1.00 | 40 | 40.00 |
| | D. McGann | 1.70 | 1.70 | 40 | 68.00 |
| | J. Stuckey | 4.70 | 4.70 | 1 | 4.70 |
| | P. Landen | 23.20 | 23.20 | 1 | 23.20 |
| | R. Luchs | 5.80 | 5.80 | 80 | 464.00 |
| | D. Huddle | 1.00 | 1.00 | 80 | 80.00 |
| | W. Daisley | 1.00 | 1.00 | 80 | 80.00 |
| Subtotal to June 16, 1982 | | 325.9 | 290.3 | | 30193.4 |
| June 17–30, 1982 | J. Mercurio | 7.60 | 7.60 | 145 | 1,102.00 |
| | G. Marx | 12.90 | 0.00 | 95 | 0.00 |
| | H. Sinclair | 0.90 | 0.90 | 100 | 90.00 |
| | P. Landen | 54.40 | 54.40 | 1 | 54.40 |
| | J. Stuckey | 20.00 | 0.00 | 1 | 0.00 |
| | R. Luchs | 1.00 | 1.00 | 80 | 80.00 |
| Jul–82 | J. Mercurio | 5.60 | 5.60 | 145 | 812.00 |
| | G. Marx | 13.70 | 13.70 | 95 | 1,301.50 |
| | P. Landen | 4.10 | 4.10 | 1 | 4.10 |
| | R. Luchs | 2.90 | 2.90 | 80 | 232.00 |
| | Law Clerk | 0.30 | 0.30 | | 11.00 |
| Aug. 1982 | J. Mercurio | 10.80 | 10.80 | 145 | 1,566.00 |
| | G. Marx | 4.40 | 4.40 | 95 | 418.00 |
| | C. McDaid | 5.00 | 5.00 | 40 | 200.00 |
| | Library | 0.30 | 0.30 | 40 | 12.00 |
| | D. Huddle | 0.30 | 0.30 | 80 | 24.00 |
| Sept. 1982 | J. Mercurio | 10.70 | 7.70 | 145 | 1,116.50 |
| | G. Marx | 0.70 | 0.60 | 95 | 57.00 |
| | D. Personette | 7.00 | 6.10 | 65 | 396.50 |
| | C. McDaid | 3.40 | 3.00 | 40 | 120.00 |
| | R. Luchs | 0.50 | 0.50 | 80 | 40.00 |
| Oct. 1982 | J. Mercurio | 15.20 | 11.80 | 145 | 1,711.00 |
| | G. Marx | 7.80 | 1.30 | 95 | 123.50 |
| | C. McDaid | 1.60 | 1.60 | 40 | 64.00 |
| | M. Finnemore | 0.50 | 0.50 | 40 | 20.00 |
| | R. Luchs | 0.30 | 0.30 | 80 | 24.00 |
| Nov. 1982 | J. Mercurio | 5.40 | 4.90 | 145 | 710.50 |
| | G. Marx | 5.30 | 5.30 | 95 | 503.50 |
| | D. Personette | 4.50 | 3.40 | 65 | 221.00 |
| | C. McDaid | 9.40 | 9.40 | 40 | 376.00 |
| Dec. 1982 | J. Mercurio | 1.60 | 1.20 | 145 | 174.00 |
| Jan. 1983 | J. Mercurio | 8.90 | 8.90 | 160 | 1,424.00 |
| | G. Marx | 48.90 | 48.90 | 100 | 4,890.00 |
| | V. Edwards | 10.80 | 10.80 | 30 | 324.00 |
| | R. Luchs | 0.70 | 0.50 | 80 | 40.00 |
| | W. Daisley | 0.60 | 0.50 | 80 | 40.00 |
| Feb. 1983 | J. Mercurio | 0.70 | 0.50 | 160 | 80.00 |
| Mar. 1983 | G. Marx | 1.90 | 1.50 | 100 | 150.00 |
| Apr. 1983 | W. Daisley | 0.40 | 0.30 | 80 | 24.00 |
| May–83 | J. Mercurio | 10.30 | 10.30 | 160 | 1,648.00 |

| Date | Attorney | Hours claimed | Hours Granted | Hourly Rate | Total |
|------|----------|--------------:|--------------:|------------:|------:|
|  | R. Luchs | 0.70 | 0.50 | 80 | 40.00 |
|  | W. Daisley | 2.00 | 1.40 | 80 | 112.00 |
| Jul–83 | R. Luchs | 0.30 | 0.30 | 80 | 24.00 |
| Aug. 1983 | J. Mercurio | 5.00 | 5.00 | 160 | 800.00 |
|  | R. Luchs | 0.20 | 0.20 | 80 | 16.00 |
|  | W. Daisley | 0.50 | 0.50 | 80 | 40.00 |
| Sept. 1983 | J. Mercurio | 8.80 | 6.80 | 160 | 1,088.00 |
|  | G. Marx | 0.40 | 0.40 | 100 | 40.00 |
|  | J. Bartoo | 11.20 | 11.20 | 85 | 952.00 |
|  | D. Munkasey | 5.80 | 5.80 | 45 | 261.00 |
| Subtotal June 17, 1982 to Sept. 1983 |  | 336.20 | 283.20 |  | 23,557.50 |
| Totals |  | 662.10 | 573.50 |  | 53,750.90 |