NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0713n.06
Filed: November 20, 2008

No. 07-2380

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GRACELAND FRUIT, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KIC CHEMICALS, INC., | ) | WESTERN DISTRICT OF MICHIGAN, |
| | ) | SOUTHERN DIVISION |
| Defendant-Appellee, | ) | |
| | ) | |
| | ) | |

Before: BOGGS, Chief Judge; GIBBONS and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Graceland Fruit, Inc.

("Graceland Fruit") appeals the district court's award of attorneys' fees to defendant-appellee, KIC

Chemicals, Inc. ("KIC"). Because we find that the district court did not abuse its discretion, we

affirm the district court's award of attorneys' fees to KIC.

I.

The relevant underlying facts of this case are outlined in the district court's opinion regarding

KIC's motion for attorneys' fees and costs:

> This case arises from a commercial transaction between Graceland and KIC
> for the purchase of three batches of mid-oleic sunflower oil. The action is brought
> by Graceland and its insurer, Citizens. Graceland contracted with KIC for three
> shipments of the oil, as evidenced by three separate contracts dated June 29, 2001;
> August 21, 2001; and October 22, 2001 ("October contract"). A provision of the

1

October contract stated, "in the event of Buyer's breach of any part of this contract, Buyer shall be liable for all Seller's damages, costs and expenses arising out of that breach including Seller's legal fees and expenses."

Graceland fully executed the first two contracts, received the oil due on the October contract, but failed to pay KIC the purchase price on the October contract.

*Citizens Ins. Co. of Am. & Graceland Fruit, Inc., v. KIC Chems., Inc.*, No. 1:04-CV-385, 2007 U.S. Dist. LEXIS 73201, at *2-3 (W.D. Mich. Oct. 1, 2007).

In June of 2004, Graceland Fruit[1] filed the underlying complaint in the United States District Court for the Western District of Michigan. The complaint set forth four causes of action: (1) breach of contract, (2) negligence, (3) fraud and misrepresentation, and (4) breach of express warranty.

Under the breach of contract claim, Graceland Fruit stated that KIC breached its contractual obligations "by providing Graceland Fruit, Inc. with poor quality oil that was insufficient for use on dried fruit." (Compl. ¶ 17.) Similarly, under its negligence claim, Graceland Fruit stated that KIC breached its duty by providing defective oil that was not appropriate for Graceland Fruit's purpose of using the oil on dried fruits. (Compl. ¶ 23.) Under its fraud and misrepresentation claims, Graceland Fruit alleged that KIC represented that it manufactured chemicals when it was merely a distributor. (Compl. ¶ 28-29.) Moreover, Graceland Fruit alleged that KIC assured the quality of

---

[1]The plaintiffs in the complaint were actually both Citizens Insurance Company of America as Subrogee of Graceland Fruit and Graceland Fruit. According to Graceland Fruit's complaint, per the terms of Graceland Fruit's insurance policy with Citizens Insurance Company of America ("Citizens Insurance"), Citizens Insurance was required to pay Graceland Fruit $585,298.20. (Compl. ¶ 12.) However, as the district court explained in an earlier opinion, Citizens Insurance was not a named party in KIC's counterclaim. *Citizens Ins. Co. of Am. v. KIC Chems., Inc.*, No. 1:04-CV-385, 2007 U.S. Dist. LEXIS 44307, at *3 (W.D. Mich. June 19, 2007). As a result, the district court concluded that Citizens Insurance was neither liable for Graceland Fruit's breach of contract, nor could it be required to share in the attorneys' fees imposed on Graceland Fruit. *Id*. In turn, for the purposes of the current matter, Citizens Insurance is no longer a party. We have therefore omitted reference to Citizens Insurance in the text of this opinion.

the oil by providing Graceland Fruit with a Certificate of Analysis. (Compl. ¶ 30.) In turn, Graceland Fruit relied on KIC's alleged misrepresentations regarding the quality of the oil, causing significant damages. (Compl. ¶¶ 32-36.) Under its final claim, Graceland Fruit alleged that KIC breached its express warranty regarding the quality of the oil. (Compl. ¶ 38.)

In its answer, KIC "denie[d] that the oil it supplied Graceland was defective," (Answer ¶ 48.) and specified a variety of affirmative defenses to Graceland Fruit's claims. Finally, KIC advanced a counterclaim, stating that Graceland Fruit breached its contract with KIC by failing to pay $5,610 as required under the October contract. In turn, KIC stated that its damages totaled $5,610, plus interest, attorneys' fees and costs, because of Graceland Fruit's breach of contract. Graceland Fruit's response admitted that it refused to pay KIC for the last shipment of oil delivered by KIC because Graceland Fruit claimed that the product was not of merchantible quality and did not meet KIC product specifications that Graceland Fruit relied upon.

In January of 2007, KIC filed a motion for summary judgment seeking dismissal of Graceland Fruit's claims and summary judgment on its counterclaim. The district court granted the motion on April 27, 2007. In doing so, the district court awarded KIC the full contract price on its counterclaim, postjudgment interest and reasonable attorneys' fees. According to the district court, KIC was entitled to attorneys' fees under the terms of the October contract and pursuant to Federal Rule of Civil Procedure 54. In its opinion, the district court considered the amount of reasonable attorneys' fees, awarding KIC a total of $464,396.18. *Citizens*, 2007 U.S. Dist. LEXIS 73201, at *34. Graceland Fruit now appeals the district court's award of attorneys' fees.

II.

3

*Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, No. 07-2380

As a general matter, this court "review[s] a district court's award of attorney fees and costs for an abuse of discretion." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citation omitted). "Where a district court has awarded attorneys' fees under a valid contractual authorization, we recognize that it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion." *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks and citation omitted). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)). The abuse of discretion standard does not apply to all aspects of our analysis. "With regard to the validity and purpose of the contractual provision itself, however, our standard of review is different: 'We review the district court's *interpretation* of contracts *de novo*.'" *Id.* (emphasis in original) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003)).

### III.

As the district court made clear in its decision of October 1, 2007, "KIC is entitled to an award of attorneys' fees based on the terms of the October 2001 contract between Graceland and KIC, which entitles KIC to the additional 'damages, costs and expenses arising out of the breach [of contract] including the Seller's legal fees and expenses.'" *Citizens*, 2007 U.S. Dist. LEXIS 73201, at *13 (alteration in original). The attorneys' fees clause relied upon by the district court states, "in the event of Buyer's breach of any part of this contract, Buyer shall be liable for all Seller's damages,

4

costs and expenses arising out of that breach including Seller's legal fees and expenses."[2]  *Citizens*,

2007 U.S. Dist. LEXIS 73201, at *2-3.

The parties do not dispute whether the attorneys' fees related to KIC's counterclaim for

breach of contract are covered by the attorneys' fees provision.  However, Graceland Fruit argues

that the district court erred in awarding attorneys' fees to KIC for legal work done to defend KIC

against Graceland Fruit's claims.  Such legal fees, argues Graceland Fruit, did not "arise[] out of"

Graceland Fruit's breach of contract. (Appellant's Br. 19-20.) Thus our inquiry centers on whether

the district court erred in concluding that the attorneys' fees incurred by KIC to defend against

Graceland Fruit's claims arose out of Graceland Fruit's breach of contract.

In support of its position, KIC cites *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979

F.2d 14 (2d Cir. 1992).  In *Diamond D*, the Second Circuit addressed a contract clause that granted

attorneys' fees to the plaintiff if those fees were "'incurred in enforcing' the franchise agreement."

---

[2]All three contracts between Graceland Fruit and KIC contain the following provision: "This contract is governed by the laws applicable in the State of New York and any dispute arising hereunder shall be subject to the jurisdiction of the Courts of the State of New York or the United States District Court for the Southern District of New York." However, as noted by the district court in its opinion of January 26, 2005, Graceland Fruit stated that for the first two contracts it only received, via fax, the first side of the contract and did not receive the second side of the contract detailing the terms and conditions of the contract. *Citizens Ins. Co. of Am. v. KIC Chems., Inc.*, No. 1:04-CV-385, slip op. at 2 (W.D. Mich. Jan. 26, 2005) (order denying defendant's motion for transfer of venue).  Moreover, KIC was unable to produce any evidence to the contrary. *Id.* at 5-6. Thus, the district court concluded that "the forum selection clause cannot be interpreted as part of the first or second agreements between the parties." *Id*. at 6.  However, because Graceland Fruit admitted agreeing to the additional terms on the second side of the third contract (*i.e.* the October contract), the forum selection clause was valid with respect to the October contract. *Id*. Given these facts, the district court concluded that transferring venue was inappropriate. *Id*. 6-8.

The district court's analysis indicates that the choice of law provision in the October contract is valid.  This decision of the district court also explains why the attorneys' fees provision in the October contract, included on the second side, is enforceable.  Indeed, Graceland Fruit has not challenged the district court's ruling as to the appropriateness of the venue.

*Id*. at 18. However, the plaintiff sought attorneys' fees not only for the work related to its suit enforcing the franchise agreement, but also the legal work done to defend against the defendants' counterclaims.[3] Thus, the Second Circuit addressed whether the legal work done to defend against the counterclaims could be considered to have been incurred in enforcing the franchise agreement.

In doing so, the Second Circuit began by explaining that "the nature – not the nomenclature – of a claim is controlling." *Id*. "Thus, 'where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim.'" *Id*. (quoting *Singer v. Shannon & Luchs Co.*, 670 F. Supp. 1024, 1028 (D.D.C. 1987)). In applying this "must prevail" standard, the court noted that the substance of the defendants' first four counterclaims "was also interposed as affirmative defenses"; this indicated that these four affirmative defenses "arose out of the contract and threatened its effective enforcement." *Id*. As a result, in order for the plaintiff to successfully enforce the franchise agreements, it also had to defend itself against the claims that underlay the defendants' counterclaims. Similarly, the court found that the defendants' fifth counterclaim would also "operate to vitiate the contract." *Id*. In turn, the court concluded that the attorneys' fees for work done to defend against these counterclaims was also work done to enforce the franchise agreement and therefore the defendants, under the terms of the contract, were liable for those attorneys' fees as well.

---

[3]The contract language in *Diamond D*, though "hardly a paragon of clarity," was substantially more favorable to the prevailing party than the language in the contract at issue here since it allowed "expenses incurred in enforcing such obligation or in defending against such claim, demand, action, or proceeding." *Diamond D*, 979 F.2d at 18. The Second Circuit did not rest its reasoning in *Diamond D* on this clause, and we do not consider the more succinct contractual language in this case to compel a different outcome here.

*Id*.[4]  This is especially the case where "the substance of [the counterclaims are] also interposed as affirmative defenses," as that further indicates the relatedness of the claims and counterclaims.  *Id*.

Another court has subsequently applied the "must prevail" standard to a case even more similar to this one, where the defendant sought to recover attorneys' fees incurred while defending against the plaintiffs' claims.  *Bonnie & Co. Fashions v. Bankers Trust Co.*, 970 F. Supp. 333, 339 (S.D.N.Y. 1997) ("*Bonnie II*") (applying *Diamond D*'s "must prevail" standard despite the fact that the defendant, now seeking reimbursement for attorneys' fees, did not initiate the original suit).[5]

---

[4]In its Reply Brief, Graceland Fruit emphasizes that

> it is well settled in New York law that, "inasmuch as a promise by one party to a contract to indemnify the other for [attorneys'] fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own [attorneys'] fees, the court should not infer a party's intention to waive the benefit of the [American Rule] unless the intention to do so is *unmistakably clear* from the language of the promise."

*United States Fid.*, 369 F.3d at 75 (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. Ct. App. 1989) (emphasis added)).  Graceland Fruit argues that the district court ignored this standard in awarding attorneys' fees under the provisions of the October contract. (Reply Br. 1-5.)

This argument is without merit.  In *United States Fid.*, the Second Circuit addressed a contractual provision in a bond that stated that the "Sureties [are] obligated . . . for . . . additional legal . . . costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Sureties under Paragraph 4 . . . ." *Id*. at 74-75.  Thus the question arose at to the meaning of "legal costs" and whether that language was intended to cover attorneys' fees.  *Id*. at 75.

The attorneys' fees provision in the October contract, in contrast to the provision in *United States Fid.*, is unmistakably clear regarding its applicability to attorneys' fees.  The question for this court is which attorneys' fees arose from Graceland Fruit's breach of contract.

[5]In attempting to avoid the Second Circuit's opinion in *Diamond D*, Graceland Fruit directs the panel's attention to *Bonnie & Co. Fashions v. Bankers Trust Co.*, 955 F. Supp. 203, 219 (S.D.N.Y. 1997) ("*Bonnie I*").  According to Graceland Fruit, in *Bonnie I*, the Southern District of New York "noted that the precedential value of *Towers Charter* is 'suspect to say the least,' given its failure to apply the rules laid down by *Hooper*." (Reply Br. 4 (quoting *Bonnie I*, 955 F. Supp. at 219-20).) Graceland Fruit then parlays this language to reach the conclusion that "the same could be said of *Diamond D*." *Id*. at 5.  But this is a sleight of hand.  It is true that in *Bonnie I*, the Southern District of New York did state that *Hooper* "announce[d] that contractual attorneys' fees

We agree with the Second Circuit's approach in *Diamond D*. The "must prevail" analysis captures the plain meaning of the attorneys' fees clause in the October contract. Under the terms of the contract, Graceland Fruit is liable for all costs "arising out of [its] breach," including attorneys' fees. In order to pursue its breach of contract claim, KIC had to defend itself against the four causes of action advanced by Graceland Fruit in its complaint. All four of the claims rested on the assumption that KIC provided Graceland Fruit with a defective product in all three deliveries, not merely the third delivery. (Compl. ¶¶ 17, 23, 30, 38.) And, Graceland Fruit admitted that it did not pay KIC for the third shipment of oil. Moreover, the substance of KIC's counterclaim – that it was not responsible for the alleged damages – was also interposed as an affirmative defense, which included the contention that KIC was not liable for consequential or special damages and that damages suffered by Graceland were caused by Graceland's own negligence rather than KIC's actions. These affirmative defenses further indicate the relatedness of KIC's counterclaim and Graceland Fruit's claims.

It therefore appears that KIC had to prevail against Graceland Fruit's four causes of action in order to succeed on its counterclaim for breach of contract. In turn, the district court was correct in its determination that, under the October contract, Graceland Fruit was liable for KIC's attorneys' fees incurred in both advancing its own counterclaim and in defending against Graceland Fruit's four

---

indemnification provisions do not alter the general rule that parties are responsible for their own litigation costs absent an 'unmistakably clear' statement to the contrary." *Bonnie I*, 955 F. Supp. at 219-20 (citation omitted). But that does not affect the rule in *Diamond D*, which applies once there is an unmistakably clear statement regarding attorneys' fees. Indeed, in *Bonnie II*, the Southern District of New York applied the "must prevail" standard from *Diamond D* in order to determine the scope of the attorneys' fees. *Bonnie II*, 970 F. Supp. at 338-39. And, given that the attorneys' fees clause in the October contract appears to be unmistakably clear, the only question that remains is upon which claims KIC was required to prevail in order to advance its own counterclaim. Neither *Bonnie I* nor *Hooper Associates* assist much with our analysis, despite the extensive briefing of Graceland Fruit to the contrary.

*Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, No. 07-2380

claims.

IV.

As this court has previously noted, "[w]e usually sustain a district court's award and division of attorneys' fees absent an abuse of discretion." *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 436 (6th Cir. 1999) (citation omitted). "[T]he award of an attorney's fee, whether pursuant to agreement or statute, must be reasonable and not excessive. Such an award should only take account of work actually performed, and fees actually incurred." *RAD Ventures Corp. v. Artukmac*, 818 N.Y.S.2d 527, 530 (N.Y. App. Div. 2006) (citation omitted).[6]

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In addition, "[t]he applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id*.

"The process of determining a reasonable fee ordinarily begins with the court's calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. at 433); *see also Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551-52 (6th Cir. 2008) (citing *Hensley*). Indeed, the Supreme Court has noted that there is "[a] strong presumption that the lodestar figure . . . represents

---

[6]It would appear that New York law should apply to the award of attorneys' fees given that it is the October contract that established KIC's right to attorneys' fees. *See supra* n.2. However, this court has previously noted that the reasonableness of an award of attorneys' fees can be analyzed under the federal common law: "We see no reason to believe application of federal common law to the determination of attorney fee awards would upset the parties' commercial expectations because attorney fee awards traditionally have not been under the exclusive domain of the states." *Issac Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 620 (6th Cir. 1998).

a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). However, district courts may take other factors into account in calculating reasonable attorneys' fees. *See, e.g.*, *LeBlanc-Sternberg*, 143 F.3d at 764.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit provided a catalog of twelve factors that trial courts may consider when calculating reasonable awards of attorneys' fees. These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989) (citing *Johnson*, 488 F.2d at 717-19). The Supreme Court stated in *Blanchard* that *Johnson*'s list serves as a useful grouping of factors to consider when determining whether an award of attorneys' fees was reasonable, though no individual factor would be dispositive. *Id.* at 93. Both the Second and Sixth Circuits have endorsed the use of the *Johnson* twelve-factor test in calculating a reasonable award of attorneys' fees. *Id*. (stating that "a trial court may apply the *Johnson* factors during its initial calculation of the attorney-fee award or when the court is considering a request for an enhancement"); *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983) (citing the *Johnson* factors as "other relevant factors in determining the size of a fee award").

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465

*Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, No. 07-2380

U.S. 886, 895 (1984)). "When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citation omitted).

Graceland Fruit challenges the district court's attorneys' fee award on two grounds. First, Graceland Fruit argues that the attorneys' fee award was excessive because KIC "unnecessarily retained a very expensive New York law firm" – Watson, Farley & Williams, LLP ("WFW"). (Appellant's Br. 27-31.) In calculating the award, Graceland Fruit claims the district court failed to adequately apply the requirements of *Hadix* limiting attorneys' fees for out-of-town specialists. In addition, Graceland Fruit argues that the district court abused its discretion in not lowering the total amount of the award in light of the excessive number of hours billed and the duplicative efforts of multiple timekeepers working on behalf of both New York and local counsel. (Appellant's Br. 31-32.)

Despite these contentions, a review of the district court's opinion reveals that it did not abuse its discretion in granting KIC's motion for attorneys' fees. In addressing Graceland Fruit's first concern, the district court stated as follows:

> Plaintiffs argue that it was not necessary for a high-ranked international law firm to handle this "simple" contract dispute. Plaintiffs are correct, although this has nothing to do with the basis for the Court's ruling. WFW's longstanding representation of KIC in various matters over the years, as well as the New York connections to this case, provide the basis for upholding WFW's attorneys' fees as reasonable. Further, if KIC had hired only local counsel to represent it throughout the litigation, the costs for getting local counsel "up to speed" on the facts of the case would have surely been costly.
>
> On these facts, the Court is convinced that under the first prong of the *Hadix* test, KIC was reasonable in hiring WFW.

*Citizens*, 2007 U.S. Dist. LEXIS 73201, at *17. (internal citations omitted). In reaching this

conclusion, the district court also relied on the Fourth Circuit's opinion in *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 139 (4th Cir. 1994), which affirmed a district court's award of attorneys' fees for non-local counsel because the non-local counsel had served as the party's attorney "for almost ten years" and had drafted the agreement in question. The district court then considered the second prong of the *Hadix* test and concluded that WFW's fees were reasonable in light of its attorneys' skill, experience and reputation. *Citizens*, 2007 U.S. Dist. LEXIS 73201, at *17-18. Having carefully considered and applied the *Hadix* test, it is clear that the district court did not abuse its discretion in awarding attorneys' fees for the legal work done by WFW.

As for its second claim that much of the legal work was duplicative or excessive, Graceland Fruit provides little detail in its brief as to exactly which portions of the work in question it finds problematic. In contrast, KIC's counsel provided records and invoices detailing the work completed on behalf of KIC, thus satisfying the requirement to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. Despite the fact that an extremely large sum of fees of over $400,000 was awarded in this case, we cannot say that such an amount was unreasonable given the nearly $800,000 worth of damages claimed by Graceland Fruit in its complaint and given the fact that Graceland Fruit chose its litigation strategy of alleging poor quality oil for not just the third shipment, but all three shipments.

In sum, the district court carefully reviewed the reasonableness of KIC's motion for attorneys' fees and applied the correct legal standards to the facts at hand. It thus did not abuse its discretion in granting KIC's motion for attorneys' fees because it did not apply the wrong standard, misapply the correct standard, or rely upon clearly erroneous findings of fact.

V.

For the foregoing reasons, we affirm the district court's award of attorneys' fees to KIC.